UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
-----------------------------------------------------------x

DAVID FRANCO,

                           Plaintiff,

      against-

KYTEL INTERNATIONAL GROUP, INC.,
GREGORY KILEY, EDWARD KILEY and
DON BOSCO,

                        Defendants.

-----------------------------------------------------------x

**AFFIDAVIT OF
GREGORY KILEY
IN SUPPORT OF
DEFENDANTS'
MOTION TO DISMISS**

04 Civ. 12159 GAO

STATE OF NEW YORK   )
                    ) ss.:
COUNTY OF NEW YORK )

    GREGORY KILEY, being duly sworn, says:

    1.  I am a defendant in this action, as is Kytel International Group, Inc., the company of which I am President. I make this affirmation in support of defendants' motion to dismiss.

    2.  In or about 1999, I was introduced to plaintiff David Franco by a New York broker in Manhattan.

    3.  Thereafter, Franco came to Kytel's offices in Manhattan, where my father, defendant Edward Kiley, and I met with him (see Complaint at ¶10, a copy of which is annexed hereto as Exhibit A).

    4.  Thereafter, Franco entered into a Subscription Agreement for Common Stock of Kytel (the "Agreement"), pursuant to which he agreed to purchase 100,000 shares of Kytel (Ex. A at ¶12; see also Agreement, a copy of which is annexed hereto as Exhibit B).

5.   The Agreement explicitly stated in capital letters that Kytel was "a newly formed start-up company with no assets...and that an investment in the company and the purchase of the shares involves an extremely high degree of risk" (Ex. B).

6.   The Agreement further provided as follows:

> Application of New York Law. This Agreement, and the application or interpretation hereof, shall be governed, construed and enforced in accordance with the internal laws of the State of New York, other than its choice of law provisions. The parties consent to the exclusive jurisdiction of the courts of New York, NY, with respect to the adjudication of any matter arising hereunder.

(Id.).

7.   In November 2001 Franco, apparently dissatisfied with his investment, demanded through his attorney that Kytel pay him $2,500,000 for "the investment in [Kytel] and other trades done by [two New York brokers not parties to this action]" (Letter of Desilets to Kiley dated November 16, 2001, a copy of which is annexed hereto as Exhibit C). This demand was made in a letter sent to Kytel's office in New York, which letter included the threat of a lawsuit if Franco's demand was not met.

8.   Thereafter, Franco brought the instant action in Massachusetts Superior Court, despite the fact that the Agreement explicitly gave New York courts explicit jurisdiction over any dispute arising from the Agreement, and despite the fact that Massachusetts courts lack personal jurisdiction over any defendant in this action, none of whom have sufficient contacts with Massachusetts to subject them to jurisdiction there.

2

**A**

.

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
Docket No.

|  |  |
|---|---|
| DAVID FRANCO,<br>              Plaintiff<br><br>v.<br><br>KYTEL INTERNATIONAL GROUP, INC.,<br>GREGORY KILEY, EDWARD KILEY and<br>DON M. BOSCO,<br>              Defendants. | **PLAINTIFF'S FIRST AMENDED<br>COMPLAINT AND<br>CLAIM OF TRIAL BY JURY** |

### Parties and Residence

1. The Plaintiff, David Franco (hereinafter "Franco") is an individual who resides at 757 Chestnut Street, Waban, Middlesex County, Massachusetts 02468.

2. The Defendant, Kytel International Group, Inc. (hereinafter "Kytel") is a Delaware corporation with the usual place of business at 15 Maiden Lane, 4th Floor, New York City, New York 10038.

3. The Defendant, Gregory Kiley is an individual who has a usual place of business at 15 Maiden Lane, 4th Floor, New York City, New York 10038.

4. The Defendant, Edward Kiley is an individual with the usual place of business at 15 Maiden Lane, 4th Floor, New York City, New York 10038.

5. The Defendant, Don M. Bosco (hereinafter "Bosco") is an individual with the usual place of business at 63 Wall Street, Suite 2502, New York City, New York 10005

### Facts Common To All Counts

6. Commencing in or about November of 1998, the Defendants began to solicit Franco to purchase $500,000 worth of stock in the Defendant Kytel. On various other dates and

occasions, the Defendants caused two other individuals to continually solicit Franco to purchase stock in Kytel.

7. One of said individuals was an unlicensed broker, who posed as a licensed broker authorized to sell Kytel stock, a fact known to each and every Defendant at all times relevant hereto.

8. The other individual was, at all times relevant hereto, a broker at the now defunct brokerage firm of Hornblower & Weeks, and upon information and belief, was not registered to do business in the State of Massachusetts as a broker, facts known to all named Defendants at all relevant times hereto.

9. The constant solicitations, in person in New York City, and on the telephone to Franco in Massachusetts from the aforementioned individuals, and by Gregory Kiley, Edward Kiley and Bosco continually exaggerated the financial well being of Kytel, and specifically fraudulently misrepresented the state of Kytel's financial well being to Franco.

10. In or about November of 1999, the aforementioned Hornblower & Weeks' broker, without any advance notice to Franco, brought Franco to a meeting at Kytel's headquarters in New York City. Present at said meeting with Defendants, Gregory Kiley, Edward Kiley, Bosco and the Hornblower & Weeks' broker.

11. At said meeting all the Defendants and the Hornblower & Weeks' broker fraudulently misrepresented the state of Kytel's financial affairs to Franco.

12. As a result of said meeting, as well as continued further solicitations on the telephone to Franco in Massachusetts by the aforementioned banned broker and Hornblower & Weeks' broker, Franco was fraudulently induced to purchase 100,000 shares of Kytel stock.

2

13. It was not until long after the Plaintiff made his last payment for the purchase of the said stock, on or about November 7, 2000, that the Plaintiff discovered that the transaction involved was a "selling away" transaction, a fact known at all relevant times hereto by all the named Defendants.

14. It was also not discovered by the Plaintiff until in or about January of 2001 that the other individual soliciting him was a banned broker, whose license had been revoked, facts that were known by all named Defendants at all relevant times hereto.

15. In addition to the above described illegal and fraudulent activity, the Defendant Kytel has never provided the Plaintiff with a stock certificate or any other evidence of ownership of said stock.

16. Additionally, Kytel and the other named Defendants have never informed the Plaintiff of the fact that Kytel at one time had filed for bankruptcy protection.

17. In point of fact, since the Plaintiff purchased the stock in Kytel as a result of the fraudulent misrepresentations of all the named Defendants, no financial information other than a delinquent September 30, 2000 balance sheet has ever been disclosed to the Plaintiff with regard to the financial health, or lack thereof, of Kytel, and Kytel continues to fail to provide said information. On information and belief, Franco states that the number of private investors in Kytel exceeded the minimum required by the Securities and Exchange Commission in the State of New York regarding such reporting at all relevant times hereto.

18. The failure to disclose to the Plaintiff the true and accurate financial situation as related to Kytel along with all named Defendants fraudulent misrepresentations made to the Plaintiff, constituted a conspiracy by all named Defendants to defraud the Plaintiff and bait him into making said investment.

3

## COUNT I - ILLEGALITY

19. The Plaintiff reiterates Paragraphs 4 through 18 of this Complaint.

20. The Plaintiff states that the transaction entered into between the Plaintiff and Defendants was illegal at a so-called "selling away".

WHEREFORE, Plaintiff demands that the transaction be rescinded and that the Plaintiff be awarded all monies paid over to Kytel plus interest, costs and attorney's fees.

## COUNT II - FRAUD

21. The Plaintiff reiterates Paragraphs 4 through 20 of this Complaint.

22. The Plaintiff states that the actions of the named Defendants constituted a fraudulent misrepresentation causing him to lose considerable monies.

WHEREFORE, Plaintiff demands judgment against the Defendants for all monies paid by him to Kytel, plus treble damages, interest, costs and attorney's fees.

## COUNT III - VIOLATION OF STATE AND FEDERAL LAWS AND REULATIONS

23. The Plaintiff reiterates Paragraphs 4 through 22 of this Complaint.

24. The actions of the Defendants violated numerous State and Federal Laws and regulations.

WHEREFORE, Plaintiff demands that all monies paid by him to Kytel be returned as treble damages, and that he be awarded his out of pocket costs, plus interest, costs and attorney's fees.

## COUNT IV - UNFAIR AND DECEPTIVE PRACTICES - 93A

25. The Plaintiff reiterates Paragraphs 4 through 24 of this Complaint.

26. The Plaintiff states that the actions of the Defendants were unfair and deceptive

4

practices pursuant to Massachusetts General Laws, Chapter 93A, Section 9.

27. On or about November 16, 2001, the Plaintiff caused to be sent to the Defendants a letter demanding full relief pursuant to said statute (a copy of which is annexed hereto and marked "A").

28. The Defendants reply to said letter was a general denial, plus an affirmation that the Defendants were not aware of the registration status of the aforementioned Hornblower & Weeks' broker. A representation which is blatantly false.

WHEREFORE, the Plaintiff demands judgment against the Defendants for treble damages plus interest, costs and attorney's fees.

## COUNT V - CONSPIRACY TO DEFRAUD

29. The Plaintiff reiterates Paragraphs 4 through 28 of this Complaint.

30. The Plaintiff states the actions of the Defendants constituted a conspiracy to defraud him.

WHEREFORE, the Plaintiff demands judgment against the Defendants for treble damages, plus interest, costs and attorney's fees.

## JURY CLAIM

Plaintiff claims a trial by jury on all issues so triable.

Respectfully submitted,
DAVID FRANCO
By his attorney,

Dated:  August 13, 2004  .

Lawrence E. Desilets
Liberty Plaza
61 Nicholas Road, Suite B5
Framingham, MA  01701
508-788-8500
BBO # 121380

5

| CIVIL ACTION COVER SHEET | DOCKET NO(S) | Trial Court of Massachusetts Superior Court Department County: __Middlesex__ |
|---|---|---|

**PLAINTIFF(S)**
David Franco

**DEFENDANT(S)**
Kytel International Group, I.
Gregory Kiley, Edward Kiley and Don K
Bosco

**ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE**
Lawrence E. Desilets, Esq.
61 Nicholas Rd. Suite B5, Framingham,
MA 01701   508-788-8300
Board of Bar Overseers number: __121380__

**ATTORNEY (if known)**

**Origin code and track designation**

Place an x in one box only:
- [x] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231.s.102C (X)

- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A99 | Fraud in the sale of stock | ( F ) | ( X )Yes ( )No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ................................................. $............
2. Total Doctor expenses .................................................. $............
3. Total chiropractic expenses ............................................ $............
4. Total physical therapy expenses ........................................ $............
5. Total other expenses (describe) ........................................ $............
   Subtotal $............
B. Documented lost wages and compensation to date ............................ $............
C. Documented property damages to date ....................................... $............
D. Reasonably anticipated future medical and hospital expenses ............... $............
E. Reasonably anticipated lost wages ......................................... $............
F. Other documented items of damages (describe)
   $............
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

   $............
   TOTAL $............

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s): The Plaintiff alleges that the Defendants made, and caused others to make fraudulent representations in order to entice him into purchasing 100,000 shares of stock in Kytel constituting a loss to the Plaintiff in the amount of $460,000.

TOTAL $460,000.0

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules : Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____ Lawrence E. Desilets DATE: 08/13/0

AOTC-6 mac066-11/99
A.O.S.C 1-2000

# CIVIL ACTION COVER SHEET
## INSTRUCTIONS

### SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

| CONTRACT | | REAL PROPERTY | | MISCELLANEOUS | |
|---|---|---|---|---|---|
| A01 Services, labor and materials (F) | | C01 Land taking (eminent domain) (F) | | E02 Appeal from administrative Agency G.L. c. 30A (X) | |
| A02 Goods sold and delivered (F) | | C02 Zoning Appeal, G.L. c.40A (F) | | E03 Action against Commonwealth Municipality, G.L. c.258 (A) | |
| A08 Commercial Paper (F) | | C03 Dispute concerning title (F) | | E05 All Arbitration (X) | |
| A98 Sale or lease of real estate (F) | | C04 Foreclosure of mortgage (X) | | E07 c.112,s.12S (Mary Moe) (X) | |
| A12 Construction Dispute (A) | | C05 Condominium lien and charges (X) | | E08 Appointment of Receiver (X) | |
| A99 Other (Specify) (F) | | C99 Other (Specify) (F) | | E09 General contractor bond, G.L. c.149,s.29,29a (A) | |
| TORT | | EQUITABLE REMEDIES | | E11 Workman's Compensation (X) | |
| B03 Motor Vehicle negligence-personal injury/property damage (F) | | D01 Specific performance of contract (A) | | E14 Chapter 123A Petition-SDP (X) | |
| B04 Other negligence-personal injury/property damage (F) | | D02 Reach and Apply (F) | | E15 Abuse Petition, G.L.c.209A (X) | |
| B05 Products Liability (A) | | D06 Contribution or Indemnification (F) | | E16 Auto Surcharge Appeal (X) | |
| B06 Malpractice-medical (A) | | D07 Imposition of Trust (A) | | E17 Civil Rights Act, G.L.c.12,s.11H (A) | |
| B07 Malpractice-other(Specify) (A) | | D08 Minority Stockholders Suit (A) | | E18 Foreign Discovery proceeding (X) | |
| B08 Wrongful death G.L.c.229,s24 (A) | | D10 Accounting (A) | | E96 Prisoner Cases (F) | |
| B15 Defamation (Libel-Slander) (A) | | D12 Dissolution of Partnership (F) | | E97 Prisoner Habeas Corpus (X) | |
| B19 Asbestos (A) | | D13 Declaratory Judgment G.L.c.231A (A) | | E99 Other (Specify) (X) | |
| B20 Personal Injury-Slip&Fall (F) | | D99 Other (Specify) (F) | | | |
| B21 Environmental (A) | | | | | |
| B22 Employment Discrimination (F) | | | | | |
| B99 Other (Specify) (F) | | | | | |

### TRANSFER YOUR SELECTION TO THE FACE SHEET.

### EXAMPLE:

| CODE NO. | TYPE OF ACTION (SPECIFY) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | (F) | ☒ Yes  ☐ No |

### SUPERIOR COURT RULE 29

**DUTY OF THE PLAINTIFF.** The plaintiff or his/her counsel shall set forth, on the face sheet (or attach additional sheets as necessary), a statement specifying in full and itemized detail the facts upon which the plaintiff then relies as constituting money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served on the defendant together with the complaint. If a statement of money damages, where appropriate is not filed, the Clerk-Magistrate shall transfer the action as provided in Rule 29(5)(C).

**DUTY OF THE DEFENDANT.** Should the defendant believe the statement of damages filed by the plaintiff in any respect inadequate, he or his counsel may file with the answer a statement specifying in reasonable detail the potential damages which may result should the plaintiff prevail. Such statement, if any, shall be served with the answer.

### A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT, BUFF COLOR PAPER.

### FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY MAY RESULT IN DISMISSAL OF THIS ACTION.

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
Docket No.

DAVID FRANCO,
               Plaintiff
)
)
)
)
v.
)
)
KYTEL INTERNATIONAL GROUP, INC.,
GREGORY KILEY, EDWARD KILEY and
DON M. BOSCO,
             Defendants.
)
)
)
)
)

## NOTICE OF APPEARANCE

TO THE CLERK-MAGISTRATE OF THE ABOVE NAMED COURT:

Kindly enter my appearance for the above-named Plaintiff, David Franco.

Dated: __August 13, 2004__

                       Lawrence E. Desilets
                       Liberty Plaza
                       61 Nicholas Road, Suite B5
                       Framingham, MA 01701
                       508-788-8500
                       BBO # 121380

# Commonwealth of Massachusetts
## County of Middlesex
## The Superior Court

### CIVIL DOCKET # MICV2004-03214-D

RE:    Franco v Kytel International Group, Inc. et al

TO: Lawrence E Desilets, Esquire
61 Nicholas Road
Suite B5
Framingham, MA 01701

### TRACKING ORDER - F TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | DEADLINE |
|---|---|
| Service of process made and return filed with the Court | 11/14/2004 |
| Response to the complaint filed (also see MRCP 12) | 01/13/2005 |
| All motions under MRCP 12, 19, and 20 filed | 01/13/2005 |
| All motions under MRCP 15 filed | 01/13/2005 |
| All discovery requests and depositions completed | 06/12/2005 |
| All motions under MRCP 56 served and heard | 07/12/2005 |
| Final pre-trial conference held and/or firm trial date set | 08/11/2005 |
| Case disposed | 10/10/2005 |

The final pre-trial deadline is not the scheduled date of the conference. You will be notified of that date at a later time.
Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

This case is assigned to session "D" sitting in Rm 7A (Cambridge) Middlesex Superior Court.

Dated: 08/18/2004

Edward J. Sullivan
Clerk of the Court

BY: Leona Kuzmirek
Assistant Clerk

Location: Rm 7A (Cambridge)
Telephone: 617-494-4010 EXT 4251

Disabled individuals who need handicap accommodations should contact the Administrative Office of the Superior Court at (617) 788-8130

B

# SUBSCRIPTION AGREEMENT FOR COMMON STOCK
## IN
## KYTEL INTERNATIONAL GROUP, INC.
## A DELAWARE CORPORATION

This Subscription Agreement is made and entered into by and between Kytel International Group, Inc., a Delaware corporation (the "Company") and the prospective purchaser ("Subscriber") who is hereby subscribing for shares ("Shares") of Common Stock in the Company (the "Common Stock"). In consideration of mutual covenants set forth herein, the parties agree as follows:

## ARTICLE I
## SUBSCRIPTION

The Subscriber hereby irrevocably subscribes to and agrees to purchase the number of Shares of Common Stock indicated on the signature page hereof at the price of $5.00 per Share in a private placement of 100,000 shares of the Company's Common Stock which are being offered for a total of $500,000. Simultaneously with the execution of this Subscription Agreement, the Subscriber is paying and delivering to the Company the amount set forth in the form of a personal check or cashier's check from a financial institution acceptable to the Company (the "Payment") payable to "Kytel International Group, Inc." The Subscriber further acknowledges and agrees that the President of the Company, in his sole discretion, has the right to accept or reject this subscription.

## ARTICLE II
## REPRESENTATION AND WARRANTIES

2.1 <u>By Subscriber</u>. The Subscriber hereby represents and warrants to, and agrees with the Company and the Company's President, as follows:

2.1.1 <u>Investment Representation</u>. The Common Stock is being purchased for his or her own account, for investment purposes only, and not for the account of any other persons, and not with a view to distribution, assignment or resale to others or to fractionalization in whole or in part. The offering and sale of the Common Stock is intended to be exempt from registration under the Securities Act of 1933 (the "Act") by virtue of Sections 4(2) and 3(a)(11) of the Act and the provisions of Regulation D promulgated thereunder ("Regulation D"). In furtherance thereof, the Subscriber represents, warrants, and agrees as follows: (I) no other person has or will have a direct or indirect beneficial interest in the Common Stock and the Subscriber will not sell, hypothecate or otherwise transfer his Common Stock except in accordance with the Act and applicable state securities laws and the

08/17/2000  16:55    2123033007    RITEL INTERNATIONAL                    PAGE  02

terms of this Agreement; and (ii) the Company is under no obligation to register the Common Stock on behalf of the Subscriber or to assist him in complying with any exemption from registration; and (iii) Subscriber is an "accredited investor " as such term is defined in Regulation D.

        2.1.2  **NON-RELIANCE ON COMPANY REPRESENTATIONS.** IN DETERMINING WHETHER TO PURCHASE THE SHARES, THE SUBSCRIBER REPRESENTS THAT HE OR SHE HAS NOT RELIED UPON ANY REPRESENTATION (WHETHER ORAL OR WRITTEN) FROM THE COMPANY OR ANY OTHER PERSON, EXCEPT FOR THOSE EXPRESSLY SET FORTH IN SECTION 2.2 OF THIS AGREEMENT. THE SUBSCRIBER ACKNOWLEDGES THAT NEITHER THE FUTURE VALUE OF THE SHARES NOR THE POSSIBILITY, AMOUNT OR VALUE OF ANY FUTURE DISTRIBUTIONS, REVENUES, PROFITS, LOSSES OR GAINS HAVE EVER BEEN REPRESENTED, GUARANTEED, OR WARRANTED TO THE SUBSCRIBER BY THE COMPANY, OR ANY OTHER PERSONS, EXPRESSLY OR BY IMPLICATION.

        2.1.3  **RISK FACTORS.** THE SUBSCRIBER RECOGNIZES AND ACKNOWLEDGES THAT THE COMPANY IS A NEWLY FORMED, START-UP COMPANY WITH NO ASSETS, SALES, REVENUES OR CUSTOMERS, THAT THE COMPANY HAS NO FINANCIAL OR OPERATING HISTORY AND THAT AN INVESTMENT IN THE COMPANY AND THE PURCHASE OF THE SHARES INVOLVES AN EXTREMELY HIGH DEGREE OF RISK.

        2.1.4  **Consultation with Advisors.** The Subscriber has carefully considered and has, to the extent he or she believes such discussion necessary, discussed with his or her financial advisors not affiliated with the Company, the Shares with respect to his or her particular tax and financial situation and he or she has determined that the Shares are a suitable investment for him or her.

        2.1.5  **Accuracy of Information.** All information which the Subscriber has provided to the Company concerning himself or herself and his or her financial position is correct and complete as of the date set forth below, and if there should be any change in such information prior to his or her acceptance as a shareholder in the Company, he or she will immediately provide such information to the Company.

        2.1.6  **Residency.** The Subscriber is a permanent resident of Massachusetts

        2.1.7  **Tax Matters.** The Subscriber understands that any references to the tax consequences arising from an investment in the Shares are not to be considered or relied upon as tax advice to prospective investors. Accordingly, the particular tax circumstances arising from an investment in the Shares will depend upon the Subscriber's particular circumstances, and the Subscriber should consult with his or her own tax advisors about the federal, state and

local tax consequences to the Subscriber prior to investing in Company. The Subscriber(s) agrees to be solely responsible for any gift, transfer or other federal and state taxes, if applicable, which may be imposed as a result of their subscriptions and related gifts.

2.1.8 No Advertising. The Subscriber has not received any general solicitation or general advertising concerning the Company, or the Shares, nor is the Subscriber aware that any such solicitation or advertising was received by anyone else.

2.1.9 ABILITY TO BEAR RISK OF INVESTMENT. THE SUBSCRIBER (I) HAS ADEQUATE MEANS OF PROVIDING FOR THE SUBSCRIBER'S CURRENT NEEDS AND POSSIBLE PERSONAL CONTINGENCIES, (ii) HAS NO NEED FOR LIQUIDITY IN THE INVESTMENT IN THE SHARES, (iii) IS ABLE TO BEAR THE SUBSTANTIAL ECONOMIC RISKS OF AN INVESTMENT IN THE COMMON STOCK FOR AN INDEFINITE PERIOD, AND (iv) CAN BEAR THE FULL ECONOMIC RISKS OF AN INVESTMENT IN THE SHARES AND COULD AFFORD A COMPLETE LOSS OF SUCH INVESTMENT.

2.1.10 Suitability. By reason of his or her profession as an attorney, accountant, financial or investment manager, consultant or advisor, or by reason of financial and business background and experience, the Subscriber is particularly and professionally qualified to evaluate and assess the risks, nature and other aspects of investing in the Shares, and is otherwise capable of bearing the economic risks of an investment in the Shares.

The foregoing representations and warranties are true and accurate as of the date hereof, shall be true and accurate as of the date of acceptance of this subscription by the Company and shall survive thereafter. If such representations and warranties shall not be true and accurate in any respect, the Subscriber will, prior to such acceptance, give written notice of such fact to the Company, specifying which representations and warranties are not true and accurate and the reasons therefor.

2.2 By Company. The Company hereby represents to the Subscriber as follows:

2.2.1 Newly Formed. THE COMPANY IS A NEWLY FORMED, START-UP COMPANY WITH NO OR VERY LIMITED SALES, REVENUES OR CUSTOMERS; THE COMPANY HAS A VERY LIMITED FINANCIAL AND OPERATING HISTORY; AN INVESTMENT IN THE COMPANY AND A PURCHASE OF THE SHARES INVOLVES AN EXTREMELY HIGH DEGREE OF RISK.

2.2.2 Outstanding Capital Stock. As of January 20, 2000, the authorized capital stock of the Company was 5,000,000 shares, of which approximately 4,500,000 shares were issued and outstanding.

**2.2.3 Business Objective.** The Company plans to develop and expand an international telecommunications business and to acquire additional equipment and systems necessary to achieve this objective. The Company gives no assurance and makes no representation, express or implied, that it will be able to achieve any of its plans, goals or objectives.

**2.3 Indemnification.** The Subscriber (jointly and severally if more than one) shall at his own cost and expense defend, indemnify and hold harmless the Company and its officers, directors, control persons and employees and their agents (individually, an "Indemnitee" and collectively, "Indemnitees") from and against all liability, statutory or otherwise, claims, suits or proceeding (whether civil, criminal, administrative or investigative), demands, judgments, fines, costs, interest, and expenses (including attorneys' and accountants' fees and disbursements incurred in the defense thereof) to which any Indemnitee may (except insofar as it arises out of the willful misconduct or gross negligence of such Indemnitee) be subject or suffer, arising from or in connection with: (I) failure to perform any of his or her obligations under this Subscription Agreement, including failure by the Subscriber to satisfy any condition or perform any obligation hereunder; (ii) any actual or alleged misrepresentation or misstatement of facts or omission to represent or state facts made by the Subscriber to the Company concerning himself or his financial position in connection with the offering or sale of the Common Stock; or (iii) any claim or cause of action of any kind by any person or entity to the effect that any one Indemnitee is in any way responsible for any act or omission by the Subscriber whether on account of any theory of derivative liability or otherwise. The Indemnitee's rights hereunder shall not be directly or indirectly limited, prejudiced, impaired, or eliminated in any way by any findings or allegation that such Indemnitee's conduct is active, passive, or subject to any other classification or that such Indemnitee is directly or indirectly responsible under any theory of any kind, character or nature for any act or omission by the Subscriber or of any other person or entity. The Subscriber's duty to indemnify the Indemnitees shall survive the termination or expiration of this Agreement.

### ARTICLE III
### OBLIGATIONS OF SUBSCRIBER

The Subscriber agrees not to transfer or assign this Subscription Agreement, or any of the Subscriber's interest herein. The Subscriber further agrees not to sell, transfer, pledge, hypothecate or otherwise dispose of any of the Shares acquired pursuant to this Subscription Agreement except in accordance with the terms of this Subscription Agreement and applicable state and federal securities laws and regulations, and in no event within twelve months from the date of purchase.

## ARTICLE IV
### SUBSCRIBER INFORMATION

The Company may only accept subscriptions from persons who meet certain suitability standards. Therefore, the Company requests and the Subscriber provides the information set forth in this Article IV.

1. **Name and Address.**

Name DAVID P. FRANCO Age 45

**Social Security Number/Taxpayer I.D. Number** 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

**Legal Resident of (State)** MASSACHUSETTS

**Residence Address (including Zip Code)** 38 BASS ROCKS ROAD GLOUCESTER, MA 01930

**Telephone Numbers:**

Residence (978) 281-9424 Business (978) 881-8022  CELL (617) 538-5777  2nd House (617) 630-8294

**Preferred Mailing Address:  Residence [✓]  Business [ ]**

2. **Financial Condition.**

   (a). My net worth (together with [excluding] my spouse's net worth), exclusive of home, home furnishings, and automobiles, is in excess of $ 1 MM.

   (b). The reasonable fair market value of my personal home, home furnishings and automobiles is in excess of $ 1 MM.

   (c). For 1997, 1998 and 1999 my actual and for 2000 my estimated annual gross income was or is (do not include your spouse's income): IS IN EXCESS OF

   1997: 500K   1998: 500K   1999: 500K   2000: 500K

   (d). My spouse's actual gross income for 1997, 1998 and 1999 and estimated 2000 gross income was or is:  N/A

   1997: _____   1998: _____   1999: _____   2000: _____

3. **Background Information.**

(a). **Please indicate your general, business or professional education, and the degrees you have received.**

| <u>School</u> | <u>Degree</u> | <u>Year Received</u> |
|---|---|---|
| VILLANOVA UNIVERSITY | B.S. CHEMISTRY | 1976 |
|  | B.S. GEN. SCIENCE | 1976 |
|  |  |  |
|  |  |  |

(b). **Please describe briefly the principal occupational positions you have held during the past five years. What is sought is a sufficient description to enable the Company to determine the extent of your vocationally related experience in financial and business matters.**

Position __CEO, Stat Products, INC.__, Dates __from 1978 on__

**Brief Description**
Pressure-Sensitive Label Manufacturer

Position _____    **Dates**

**Brief Description**

Position_____    **Dates**

**Brief Description**

Position_____    **Dates**

**Brief Description**

(c).    **In which state do you currently:**

(i).    **Maintain your primary residence?**    MASSACHUSETTS

(ii).   Maintain your secondary residence?    MASSACHUSETTS
(iii).  Vote?                                 MASSACHUSETTS

(iv).   File state income tax returns?        MASSACHUSETTS

(v).    Maintain a driver's license?          MASSACHUSETTS

4.   **Investment Experience.**

(a).   Please indicate the frequency of your investment in marketable securities:

   Often [✓]   Occasionally [ ]   Seldom [ ]   Never [ ]

(b).   Please indicate the frequency of your investment in "restricted securities," (securities which were sold in reliance upon one or more exemptions from registration under the Securities Act of 1933):

(c).   Often [ ]   Occasionally [ ]   Seldom [✓]   Never [ ]

(d).   Do you make your own investment decisions?

   Often [✓]   Occasionally [ ]   Seldom [ ]   Never [ ]

(e).   What are your principal sources of investment knowledge or advice? (Please check all which are applicable.)

First hand experience with industry        [✓]

Financial publication(s)                   [✓]

Trade or Industry publication(s)           [ ]

Banker(s)                                  [ ]

Broker(s)                                  [✓]

Investment Advisor(s)                      [ ]

Attorney(s)                                [ ]

Accountant(s)                              [ ]

(f).   Please list any other information which you believe is relevant in showing that you are able to adequately evaluate the risks and merits of your investment in the Shares: FIRST HAND EXPERIENCE WITH MUSE TECHNOLOGIES

# ARTICLE V
## SUBSCRIBER ACKNOWLEDGEMENTS

Subscriber understands, acknowledges and agrees with the Company, as follows:

(a). No federal or state agency has made any determination or finding as to the fairness of the offering of the Shares as an investment, nor any recommendation or endorsement of the Shares.

(b). There is no public market for the Shares or any of the Company's securities and it is unlikely that such a market will ever develop. The Company is under no obligation to register the Shares under any circumstances or to attempt to make available any exemption from registration under the Act or under any applicable securities law. There can be no assurance that Subscriber will be able to sell or dispose of the Shares. Moreover, no assignment, sale, transfer, exchange or other disposition of the Shares can be made other than in accordance with applicable securities laws and this Agreement.

(c). Each certificate representing the Shares will bear the following legend, or one similar thereto, drawing attention to restrictions on its transferability:

THE SECURITIES EVIDENCED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "ACT") OR UNDER ANY APPLICABLE STATE SECURITIES LAW. THESE SECURITIES HAVE THE STATUS OF SECURITIES ACQUIRED IN A TRANSACTION UNDER SECTION 4(2) OF THE ACT AND MAY NOT BE RESOLD WITHOUT REGISTRATION UNDER THE ACT OR AN EXEMPTION THEREFROM AND WITHOUT REGISTRATION UNDER APPLICABLE STATE SECURITIES LAWS OR AN EXEMPTION THEREFROM.

(d). The Subscriber has such knowledge and experience in financial and business matters that the Subscriber is capable of evaluating the merits and risks of an investment in the Shares and of making an informed investment decision.

(e). The Subscriber has been provided with a reasonable opportunity to ask questions and receive answers concerning the terms and conditions of the offering of the Shares. The Subscriber has made all investigations regarding the Company and its proposed business which he or she deems necessary or desirable.

(f). The Subscriber has had prior personal or business relationships with the Company or its officers or directors or by reason of the Subscriber's business or financial experience, has the capacity to protect the Subscriber's own interest in connection with its investment in the Shares.

(This space intentionally left blank)

## ARTICLE VI
## MISCELLANEOUS

6.1    Notices. Any notice, payment, demand or communication required or permitted to be given by any provision of this Subscription Agreement shall be deemed to have been sufficiently given or served for all purposes if delivered personally to the party to whom the same is directed or three (3) business days after deposit in the United States mail, registered or certified, postage and charges prepaid, addressed to the subscriber at the address specified on the signature page hereof or if to the Company to the President at 15 Maiden Lane, Fourth Floor, New York, NY 10038.

6.2    Severability. If any provision of this Subscription Agreement shall be held invalid, illegal or unenforceable in any applicable jurisdiction by a court of competent jurisdiction, it shall be severed, and the validity, legality and enforceability of the remaining provisions, shall not in any way be affected or impaired thereby.

6.3    Application of New York Law. This Agreement, and the application or interpretation hereof, shall be governed, construed and enforced in accordance with the internal laws of the State of New York, other than its choice of law provisions. The parties consent to the exclusive jurisdiction of the courts of New York, NY, with respect to the adjudication of any matter arising hereunder.

6.4    Remedies. The Company shall be entitled to equitable relief, including specific performance, in addition to whatever other damages it may be entitled to in the event Subscriber breaches any provision hereof relating to the sale, pledging or other transfer of any

shares of Common Stock.

**6.5    Headings.**  Headings at the beginning of each Article and Section of this Subscription Agreement are solely for the convenience of the Parties only and are not to be construed for purposes of interpreting this Subscription Agreement.

**6.6    Entire Agreement.**  This Agreement contains the entire, complete and final agreement of the parties relating to the subject matter hereof. Any oral representations and modifications concerning this instrument shall be of no force and effect unless contained in a subsequent written modification signed by the party to be charged.

**6.7    Gender and Number.**  With respect to words used in this Subscription Agreement, the singular form shall include the plural form, the masculine gender shall include the feminine or neuter gender, and vice versa, as the context requires.

**6.8    Successors.**  This Subscription Agreement shall be binding on and shall inure to the benefit of the respective successors, assigns, heirs, legatees, distributees, executors, administrators and personal representative of the parties hereto.

**6.9    Counterparts.**  This Agreement may be executed in counterparts by each of the parties hereto, all of which taken together shall be deemed one original.

**6.10    Form of Ownership.**  The Subscriber desires the following form of ownership for the Common Stock.

✓    Individual (One signature required)

——    Joint Tenants with right of survivorship (All parties, must sign)

——    Tenants-in Common (All parties must sign)

——    Community Property (One signature required if interest held in one name, i.e., managing spouse; two signatures required if interest is held in both names)

——    Qualified Subchapter S Trust (Trustee must sign as follow:  "trustee name" as Trustee for "trust name" dated _____)

## SIGNATURE PAGE FOR INDIVIDUAL

**IF THE SUBSCRIBER IS AN INDIVIDUAL, COMPLETE THE FOLLOWING SIGNATURE LINES TO THE SUBSCRIPTION AGREEMENT:**

In Witness Whereof, the parties have executed this Subscription Agreement as of the Effective Date.

_Daniel P. Franco_
**Signature of Individual**

**Signature of Joint Purchaser, if any**

DAVID P. FRANCO
**Print Name of Individual**

**Print Name of Joint Purchaser (if any)**

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
**Soc. Sec. No. of Individual**

**Soc. Sec. No. of Joint Purchaser (if any)**

**Legal Residence Address of Indiv.**
**(Do Not Use PO Box)**
38 BASS ROCKS ROAD
GLOUCESTER, MA 01930
**City      State      Zip Code**

**Legal Residence Address of**
**Joint Purchaser (if any) (Do Not Use PO Box)**

**City      State      Zip Code**

**Mailing Address of Individual**
**(If different from above)**

**Mailing Address of Joint**
**Purchaser (if any)**
**(If different from above)**

**City      State      Zip Code**

**City      State      Zip Code**

100,000
**Number of Shares Subscribed For**

$500,000
**Amount of Payment**

**Agreed and Accepted:**
**KYTEL INTERNATIONAL GROUP, INC.**

By: _____
Name: Gregory Kiley
Title: President & CEO

C

*Lawrence E. Desilets*

ATTORNEY-AT-LAW
LIBERTY PLAZA
61 NICHOLAS ROAD - SUITE B5
FRAMINGHAM, MASSACHUSETTS 01701

(508) 788-8500
FAX (508) 788-6668

*Certified Mail, Return Receipt Requested, No. 7000 0600 0027 9640 8940*

**_DEMAND_**

November 16, 2001

Mr. Gregory Kiley
Kytel International Group, Inc.
15 Maiden Lane, 4th Floor
New York, NY  10038

RE:  David Franco

Dear Mr. Kiley:

Please be advised I represent the above-named with regard to a claim against your company arising out of the activities of certain individuals including Gregory Kiley, Alfred Blair Blaikie, III and Mr. John Puglisi.  It is the allegation of this law firm that your company engaged in a conspiracy with Blaikie and Puglisi (posing as Kenneth Mandile) the result of which was the "selling away" of $465,000 worth of stock in your company.  This was done while your company knowing full well that Mr. Blaikie was not registered in the State of Massachusetts and that Mr. Puglisi had lost his license before the transaction, and even more egregiously, posing as a Kenneth Mandile who, it is our understanding, was incarcerated at the time these transactions were made.  At the time, your firm knew that Mr. Puglisi was working as a broker at Hornblower and Weeks, Inc. even though he was not licensed to do so.  It is the allegation of this firm that your activities violated both Federal and State laws and regulations.

It is the further allegation of this firm that your company's failure to notify Mr. Franco of the circumstances surrounding Mr. Blaikie and Mr. Puglisi cost Mr. Franco far more than that the $465,000 that he invested in your company.  In point of fact, the illegal activities of your company caused my client damages of more than $2,000,000 taking in the consideration his investment in your company and other trades done by Puglisi and Blaikie.  Your company was fully aware of Blaikie and Puglisi's misrepresentations to my client both in terms of its present value and projected future value as well as its history of bankruptcy.  Your company was also aware of other illegal activities of Puglisi and Blaikie, but failed to disclose those to Mr. Franco.

This letter is being sent to your company pursuant to Massachusetts General Laws, Chapter 93A, Section 9, in which we hereby make demand that your company pay to my client the sum of

Mr. Gregory Kiley
Kytel International Group, Inc.
November 16, 2001
Page 2

$2,500,000 within thirty days of the date of this letter.  Your failure to do so will result in suit being brought against your company in Massachusetts seeking double or treble damages plus reasonable attorney's fees and costs.

Very truly yours,

Lawrence E. Desilets

LED:lld